# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00517-CR

**The State of Texas, Appellant**

**v.**

**Marli Shealyn Elrod, Appellee**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NO. CR2011-633, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING**

## O P I N I O N

The State of Texas appeals a pretrial order granting, in part, Marli Shealyn Elrod's motion to suppress. In two points of error, the State contends that the trial court erred by concluding that Elrod had standing to contest the searches conducted by investigating detectives and by suppressing the evidence resulting from two of the complained-of searches. We affirm the trial court's order of suppression.

## BACKGROUND[1]

On March 17, 2011, deputies and emergency personnel responded to a 911 call concerning an infant child who had stopped breathing. Upon responding to the location, the "Yorkshire residence," deputies made contact with Elrod who indicated that she was babysitting the

---

[1] As this is a pretrial interlocutory appeal, the record is limited. We obtain this background information from the record of the suppression hearing and the exhibits admitted at this hearing.

child, P.E., while the child's mother was away from the residence. She explained to the deputies that earlier in the day she had accidentally dropped P.E. as she was putting P.E. down for her nap when a dog bit her in the ankle. She said the child struck her head on the railing of the crib before falling to the floor where she landed on a stuffed animal toy. Elrod informed the deputies that she picked P.E. up and calmed her. She indicated that after P.E. stopped crying she was happy and even played with Elrod's 14-month old daughter. Elrod said she later put P.E. back down for her nap. When she subsequently checked on her, she discovered the child was having difficulty breathing so she called for emergency help.

During the course of their investigation, sheriff's deputies obtained four separate search warrants. The first search warrant (SW2011-079) was issued that same day, March 17, 2011, and authorized a search of the Yorkshire residence. During the execution of this search warrant, officers seized a laptop from the Yorkshire residence and took photographs, measurements, and a video recording of the inside of the home. The second search warrant (SW2011-080) was issued the following day, March 18, 2011, and authorized a search of the laptop seized from the home on March 17th. A third search warrant (SW2011-091) was issued March 29, 2011, and authorized an additional search of the Yorkshire residence. During the execution of this search warrant, officers seized a baby crib and wooden chairs with booster seats attached, and took photographs of those items within the home. The fourth search warrant (SW2011-092) was also issued March 29, 2011, and authorized a search of Elrod's cell phone.

Prior to trial, Elrod filed a motion to suppress all of the evidence obtained as a result of the execution of the four search warrants. At the pretrial hearing on the motion, the State argued

2

that Elrod lacked standing to contest the searches. After hearing testimony from Elrod and argument from both parties, the trial court concluded that Elrod had standing. No further testimony was presented at the hearing. Elrod argued that the first search warrant lacked sufficient probable cause both to show that a crime had been committed or that evidence of a crime would be found at the residence. She next argued that, as a result of the invalidity of the first search warrant, the search of the laptop pursuant to the second search warrant was the fruit of the poisonous tree. She further argued that the second search warrant lacked sufficient probable cause that a specific crime had been committed or that there was evidence of such crime on the laptop. Elrod also argued that the third search warrant lacked probable cause that a specific offense had been committed. Finally, she argued that the fourth search warrant lacked probable cause that a specific offense had been committed or that her cell phone contained evidence of a crime. The trial court made no ruling at the conclusion of the hearing, but took the matter under advisement.

Subsequent to the hearing, prior to trial, the trial court granted Elrod's motion to suppress as to the first two search warrants (SW2011-079 and SW2011-080) and suppressed the evidence recovered from the searches pursuant to those warrants. The court concluded that the affidavit in support of the first search warrant lacked sufficient probable cause and, consequently, the second search warrant was "tainted by the fruit of the poisonous tree" because the laptop was recovered during the execution of the first search warrant. The trial court denied Elrod's motion as to the last two search warrants (SW2011-091 and SW2011-092). The State appeals the trial court's order.

## DISCUSSION

In its first point of error, the State contends, as it did below, that Elrod lacks standing to contest the search of the Yorkshire residence because she failed to demonstrate a legitimate expectation of privacy in the residence. In its second point of error, the State argues that the trial court erred in suppressing the evidence recovered from the search of the Yorkshire residence and the laptop seized from the residence because the affidavits in support of those search warrants sufficiently set forth probable cause.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The trial court's ruling on the motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. We afford almost total deference to the trial judge's rulings on mixed questions of law and fact when the resolution of those questions depends on an evaluation of credibility and demeanor. *State*

*v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Johnson*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89. All purely legal questions are reviewed de novo. *Johnson*, 336 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004).

At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *Johnson*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89; *Miller v. State*, 335 S.W.3d 847, 854 (Tex. App.—Austin 2011, no pet.). When, as here, the trial court makes no findings of fact and conclusions of law, and none are requested, we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling so long as those findings are supported by the record. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche*, 10 S.W.3d at 328.

**Standing**

The State first urges that the trial court erred by concluding that Elrod had standing to contest the search of the Yorkshire residence or the laptop seized from the residence and thus to complain about the search warrants issued by the magistrate in this case.

5

*Expectation of Privacy in Residence*

The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution protect individuals against unreasonable searches and seizures. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008). The rights secured by the Fourth Amendment and Article I, Section 9 are personal. *Emack v. State*, 354 S.W.3d 828, 834 (Tex. App.—Austin 2011, no pet.); *see Rakas v. Illinois*, 439 U.S. 128, 139 (1978); *Richardson v. State*, 865 S.W.2d 944, 948–49 (Tex. Crim. App. 1993). A defendant seeking to suppress evidence on the ground that it was obtained in violation of the Fourth Amendment or Article I, Section 9 must show that he personally had a reasonable expectation of privacy that the government violated. *Emack*, 354 S.W.3d at 834; *see Rakas*, 439 U.S. at 139–40; *Handy v. State*, 189 S.W.3d 296, 299 (Tex. Crim. App. 2006); *see also Kothe*, 152 S.W.3d at 59 (standing under Fourth Amendment); *Richardson*, 865 S.W.2d at 948–49 (standing under Article I, § 9); *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995) (standing requirement of Article 38.23, Texas statutory exclusionary rule). The defendant bears the burden of demonstrating standing to challenge the legality of the search by showing that he had a subjective expectation of privacy in the place invaded that society is prepared to recognize as reasonable. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1992).

In considering whether an appellant has demonstrated an objectively reasonable expectation of privacy, we examine the totality of the circumstances surrounding the search,

including whether: (1) the defendant had a property or possessory interest in the place invaded; (2) he was legitimately in the place invaded; (3) he had complete dominion or control and the right to exclude others; (4) prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) he put the place to some private use; and (6) his claim of privacy is consistent with historical notions of privacy. *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138. This list of factors is not exhaustive, nor is any one factor dispositive of an assertion of privacy. *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138–39.

An "overnight guest" has a legitimate expectation of privacy in his host's home. *Luna*, 268 S.W.3d at 603 (citing *Minnesota v. Olson*, 495 U.S. 91, 98 (1990)). However, the legitimate privacy expectation of an overnight guest does not extend to a casual visitor or guest who is merely present with the consent of the homeowner. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

The State contends that Elrod lacked standing because she was only a babysitter and, as such, was simply a casual visitor or guest without the expectation of privacy of an overnight guest. However, Elrod's testimony at the suppression hearing established that she kept clothing and other personal property at the Yorkshire residence and that she and her daughter "often" spent the night in the home, "every weekend" from Friday through Sunday or sometimes Monday. In fact, she testified that the room where she and her daughter slept on those occasions was considered by her and those living in the home to also be "their" room.[2] Her testimony also established that she had spent the night at the residence on March 16th, the night before she called for emergency help for

---

[2] It appears that Elrod was romantically involved with the adult son of the homeowners. The room that she and her daughter stayed in was his room.

P.E., and that when she called for help she was in the home caring for P.E. and her child. Thus, the record reflects that as a frequent overnight guest and caretaker for children in the home, Elrod had a possessory interest in the residence and was legitimately in the home. Further, as the babysitter, Elrod had dominion and control over the residence and had the right, perhaps even the duty, to exclude others from the home.

In its argument, the State focuses on evidence that, according to the State, contradicts Elrod's testimony. First, Elrod previously lived full time at this residence but moved out over a year before this incident and expressed to detectives that she had no desire to move back in with her boyfriend. Second, she told investigating deputies that she had moved back in with her parents in Austin, Texas and on March 17th her parents' Austin residence was where she was receiving her mail and was the address listed on her driver's license.[3] The State also asserts that Elrod was inconsistent in her testimony because she admitted on cross-examination that she told deputies that she and her daughter only spent the weekends at the Yorkshire residence on those weekends that the homeowners' son, her boyfriend, did not work.

None of this evidence, however, negates the fact that Elrod was a frequent overnight guest in the residence, with clothing and personal property in the home. At best, this testimony creates a conflict in evidence that the trial court was permitted to resolve in Elrod's favor. The trial judge is the sole trier of fact and exclusive judge of credibility of the witnesses and the weight to be given to their testimony. *St. George*, 237 S.W.3d at 725. We defer to the trial court's factual

---

[3] The State acknowledges that the evidence showed that the Yorkshire residence was the address listed on Elrod's voter registration.

8

findings and view them in the light most favorable to the prevailing party, although we review the legal issue of standing de novo. *Kothe*, 152 S.W.3d at 59; *see Parker v. State*, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006). When the trial court fails to make explicit findings of fact, we imply fact findings that support the trial court's ruling so long as the evidence supports these implied findings. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). Examining all the circumstances, the trial court could reasonably find that Elrod was a resident of the Yorkshire residence, at least part-time, or a regular overnight guest with a legitimate expectation of privacy in where she and her child frequently and routinely spent the night. Under the circumstances, the trial court could reasonably conclude that Elrod had a subjective expectation of privacy in the home that was objectively reasonable.

*Expectation of Privacy in Room with Crib*

The State additionally argues that while Elrod may have standing in the Yorkshire residence, she had no reasonable expectation of privacy in the room containing the crib or the other property described in the first search warrant because she called for emergency aid. Relying on a combination of the emergency doctrine and plain view doctrine, the State contends that Elrod essentially waived her expectation of privacy because she invited emergency responders into the home and those individuals saw, in "plain view," the evidence later sought in the search warrant.[4]

---

[4] We note that there is no evidence in the record before us that the emergency responders actually entered the Yorkshire residence when responding to Elrod's call for help or that they saw any of the evidence the deputies later sought to search for and seize pursuant to the subsequent search warrant.

The emergency doctrine is a recognized exception to the warrant requirement. *Laney v. State*, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003) (citing *Mincey*, 437 U.S. at 392). The emergency doctrine allows police officers to make warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. *Shepherd v. State*, 273 S.W.3d 681, 683–84 (Tex. Crim. App. 2008) (citing *Mincey*, 437 U.S. at 392); *Laney*, 117 S.W.3d at 861. The emergency doctrine is limited. It applies when the police are acting, not in their "crime-fighting" role, but in their limited community caretaking role to "protect or preserve life or avoid serious injury." *Laney*, 117 S.W.3d at 861. The officer's "actions [must be] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* (quoting *Mincey*, 437 U.S. at 392). "[T]here is a difference between rendering emergency aid and investigating the possibly criminal cause of the emergency. The emergency doctrine justifies the former, but it does not always justify the latter." *Bray v. State*, 597 S.W.2d 763, 768 (Tex. Crim. App. 1980). The emergency doctrine does not apply when the police are carrying out their "crime-fighting" role by conducting a search based on probable cause to gather evidence of a crime. *Shepherd*, 273 S.W.3d at 684; *Laney*, 117 S.W.3d at 858. If the emergency doctrine applies, the police may seize evidence that is in plain view during the course of their legitimate emergency activities. *Shepherd*, 273 S.W.3d at 684; *Laney*, 117 S.W.3d at 862.

The "plain view" seizure doctrine is another exception to the warrant requirement. *See Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). It allows an officer to seize an item during a warrantless search if (1) the officer sees an item in plain view at a vantage point where he has the right to be, and (2) it is immediately apparent that the item seized constitutes

10

evidence—that is, there is probable cause to associate the item with criminal activity. *Miller v. State*, No. PD-0705-11, 2012 WL 5869416, at *8 (Tex. Crim. App. Nov. 21, 2012) (citing *Martinez v. State*, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000)); *Ramirez v. State*, 105 S.W.3d 730, 745 (Tex. App.—Austin 2003, no pet.). Because such an officer is legitimately on the private premises, and so long as he has not exceeded the authority granted him by the warrant or the exigency that legitimizes his presence in the first place, he may seize any item in plain view that probable cause tells him is contraband. *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010). He may seize this item, just as he would be permitted to seize any item in public that it was "immediately apparent" to him was contraband, without first obtaining a warrant. *Id.*

Neither the emergency doctrine nor plain view doctrine addresses the issue of standing. They do not create, diminish, or even measure a person's legitimate expectation of privacy. Nor do they suggest the waiver of any expectation of privacy. Rather, these doctrines serve to justify or excuse the governmental intrusion upon a person's legitimate expectation of privacy under certain circumstances. These doctrines do not support the State's assertion that Elrod waived her expectation of privacy by calling for emergency aid for P.E. and thus lacked standing to contest the subsequent search of a particular room within the home. We reject the State's contention that by inviting emergency personnel into a residence to protect or preserve life, a person somehow relinquishes her expectation of privacy in the home.

Moreover, the State is procedurally defaulted from asserting that the trial court's ruling should be reversed on this additional legal theory. An appellate court may *affirm* a trial court's decision on a legal theory not presented to the trial court because the ordinary notions of

11

procedural default do not require a prevailing party to list or verbalize in the trial court every possible basis for upholding its decision. *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002) (citing *State v. Mercado*, 972 S.W.2d 75, 77-78 (Tex. Crim. App. 1998)); *State v. Huddleston*, 164 S.W.3d 711, 716 (Tex. App.—Austin 2005, no pet.). However, an appellate court may not *reverse* a trial court's decision on a legal theory not presented to the trial court by the complaining party because the ordinary notions of procedural default do not permit a trial court's decision to be reversed on a theory the trial court did not have an opportunity to rule on and upon which the non-appealing party did not have an opportunity to develop a complete factual record. *Hailey*, 87 S.W.3d at 122; *Huddleston*, 164 S.W.3d at 716. The ordinary notions of procedural default apply equally to the defendant and the State. *Mercado*, 972 S.W.2d at 78; *Huddleston*, 164 S.W.3d at 716. Here, the State raises this argument—that pursuant to the emergency and plain view doctrines Elrod waived her expectation of privacy and consequently lacks standing—for the first time on appeal. The record does not reflect that it was raised or argued at the suppression hearing. Because the State did not raise this contention below, it is waived. *See Miller*, 335 S.W.3d at 858.

*Conclusion Regarding Standing*

We conclude that the trial court did not abuse its discretion in finding that Elrod had standing to challenge the first two search warrants and the subsequent searches of the Yorkshire residence and the laptop seized from that residence. We overrule the State's first point of error.

12

**Probable Cause**

The State next argues that the trial court erred by concluding that the magistrate lacked probable cause to issue the search warrants for the Yorkshire residence and the laptop seized from that residence. Consequently, the State contends that the trial court abused its discretion in suppressing the evidence recovered from those searches.

*Probable Cause Affidavit*

No search warrant may issue unless a sworn affidavit is first presented to the magistrate setting forth sufficient facts to show that probable cause exists for its issuance. Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2012). The sworn affidavit must set forth facts sufficient to establish probable cause:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

*Id.* art. 18.01(c) (West Supp. 2012). Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate, there is at least a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13 (1983)).

When reviewing a decision by a judge or magistrate to issue a search warrant, we apply a deferential standard of review because of the constitutional preference for law

13

enforcement officials to obtain warrants rather than conduct warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). The facts submitted for the magistrate's probable cause determination are those contained within the four corners of the affidavit and are to be read in a common-sense and realistic manner. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). A magistrate may draw reasonable inferences from the facts stated in the affidavit. *Rodriguez*, 232 S.W.3d at 61; *Hedspeth v. State*, 249 S.W.3d 732, 737 (Tex. App.—Austin 2008, pet. ref'd). When in doubt about the propriety of the magistrate's conclusion, we defer to all reasonable inferences the magistrate could have made. *Rodriguez*, 232 S.W.3d at 61; *see McLain*, 337 S.W.3d at 271. Our inquiry, then, is whether there are sufficient facts stated within the four corners of the affidavit, coupled with inferences from those facts, to establish a fair probability that evidence of a particular crime will likely be found at a given location. *See Rodriguez*, 232 S.W.3d at 62.

The affiant in this case was Detective Wayne E. Lehman. The affidavit filed by the detective in support of his request for a search warrant for the Yorkshire residence asserted his belief that evidence used in the commission of aggravated assault would be found at that location. To support this belief, the detective first included a description of Elrod's account of how P.E. sustained her injuries. According to Lehman, Elrod explained that she accidentally dropped the child when she was putting her down for a nap because the dog bit her on the ankle. She further explained that P.E.'s head struck the railing of the crib as she fell to the floor where she landed on top of a stuffed animal toy. The detective then stated in his affidavit that he looked at photographs taken by a colleague at the hospital where, according to the detective's recitations, the child was "conscious and

14

alert." The photos, attached to his affidavit, depict several bruises on the child's face. The detective then opined that the bruises on the child's face "did not appear to be consistent with [Elrod's] account of the incident."

There was no information in the affidavit about the detective's training and experience, his general knowledge of child abuse crimes, or his familiarity with injuries sustained in such crimes based on his training and experience. Nor did he detail the facts on which he based his belief that Elrod, or someone else, had somehow intentionally inflicted serious bodily injury to P.E. Simply put, the information the detective provided in the affidavit merely asserted that he did not believe Elrod's story. A mere conclusory statement will not suffice to show probable cause. *Gates*, 462 U.S. at 239.

Although the detective stated in the affidavit that he sought evidence in connection with the offense of aggravated assault, the affidavit did not provide any basis from which it could be inferred that P.E. was the victim of an aggravated assault. Nor did the affidavit contain any information indicating that Lehman would have any reason to believe that evidence relating to an aggravated assault would be found in the residence. There were no facts articulated to form a basis of belief that P.E.'s injuries were sustained in an aggravated assault, other than the detective's disbelief of Elrod's account based on his viewing of the photographs of the child. While the detective sought evidence of objects that "could cause blunt force trauma to an infant child's head," there were no facts set forth in the affidavit indicating that P.E. suffered blunt force trauma to the head. The only information concerning the child's medical condition was the attached photographs depicting bruises on her face along with the recitation that these photographs were taken at the

15

hospital where the child was conscious and alert. The detective also sought evidence of items that "could be used to suffocate or strangle an infant child," yet nowhere in the affidavit are there any facts suggesting that P.E. was strangled or suffered injuries consistent with strangulation or suffocation. Finally, the detective also sought computer and digital evidence "which could be used for internet searches that could be researched to conceal or attempt to conceal said offense." However, the affidavit set forth no facts from which to infer that Elrod had used any such devices. The detective's belief that a computer device could be used for such purposes does not set forth facts from which to believe or infer that a computer device had been so used on this occasion.

Given the paucity of facts in the affidavit, we conclude that the magistrate did not have a substantial basis for determining that probable cause existed to search the Yorkshire residence. The affidavit lacked a substantial basis for determining that there was probable cause to believe that the offense of aggravated assault had been perpetrated or that there was evidence related to the commission of such offense in the Yorkshire residence. Accordingly, we hold that the trial court did not abuse its discretion in granting Elrod's motion to suppress the evidence obtained during the search of the Yorkshire residence pursuant to the first search warrant.

The "fruit of the poisonous tree" doctrine serves to exclude as evidence not only the direct products of Fourth Amendment violations, but also the indirect products. *Wong Sun v. United States*, 371 U.S. 471, 484, 487–88 (1963) (explaining that exclusionary rule applies to evidence "obtained either during or as a direct result of" Fourth Amendment violation); *State v. Iduarte*, 268 S.W.3d 544, 550–51 (Tex. Crim. App. 2008) (citing *Armstrong v. State*, 550 S.W.2d 25, 31 (Tex. Crim. App. 1976)). The evidence recovered from the laptop seized during the first search of

16

the Yorkshire residence was the indirect product of an illegal search. Therefore, that evidence was properly subject to suppression based on the taint of the illegal search through which the laptop was obtained. Moreover, the affidavit in support of the search warrant for the laptop, while adding the offense of injury to a child as an offense believed to be committed, contained the same information, or lack thereof, as the first search warrant. It too failed to set forth sufficient facts from which a magistrate could determine that an offense had been perpetrated against P.E. or that there was evidence related to the commission of such offense on the laptop. Again, the detective's mere suspicion that the laptop could have been used to research how to conceal a crime does not suffice to show probable cause. Accordingly, we hold that the trial court did not abuse its discretion in granting Elrod's motion to suppress the evidence obtained pursuant to the search of the laptop.

*Good Faith Exception*

The State contends that, in the alternative, even if the search warrants at issue lacked probable cause, the evidence is still admissible because the officers conducting the searches relied on the search warrants in good faith. There is some dispute among the parties as to whether the State is asserting a generic "good faith" exception under *United States v. Leon*, 468 U.S. 897, 924 (1984), if such exception exists, or is limited to the statutory good faith exception contained in Article 38.23(b) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.23(b) (West 2005).

Texas law provides that evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States, shall not be admitted in evidence against the accused on the trial of any criminal

17

case. *Id.* art. 38.23(a) (West 2005). Pursuant to Article 38.23(b), "[i]t is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *Id.* art. 38.23(b). Under its unambiguous language, the statutory good faith exception requires an initial finding of probable cause.

The State contends that because Elrod failed to verbally argue the statutory ground for exclusion at the suppression hearing, it is not now limited by the statutory good faith exception. Elrod argues that the statutory ground for exclusion was presented to the trial court because the motion the trial court ruled on explicitly articulated Article 38.23 as a ground for exclusion. However, we need not resolve this dispute because the State is procedurally defaulted from asserting this "good faith" argument as a basis for reversing the trial court's ruling. Again, an appellate court may *affirm* a trial court's decision on a legal theory not presented to the trial court, but it may not *reverse* a trial court's decision on a legal theory not presented to the trial court. *Hailey*, 87 S.W.3d at 121–22; *Huddleston*, 164 S.W.3d at 716. Here, the State raises this good faith argument for the first time on appeal. Because the State failed to raise this contention to the trial court below at the suppression hearing, it is waived. *See Miller*, 335 S.W.3d at 858.

*Conclusion Regarding Probable Cause*

We conclude that the trial court did not err in finding that the magistrate lacked probable cause to issue the first search warrant of the Yorkshire residence and that the ensuing search warrant for the laptop was tainted by the illegality of the first search. Therefore, we hold that the trial court did not abuse its discretion in suppressing the evidence obtained from the illegal search

18

of the Yorkshire residence or the subsequent illegal search of the laptop recovered from the home. We overrule the State's second point of error.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in finding that Elrod had standing to challenge the complained-of searches or in finding that the first two search warrants lacked sufficient facts to show that probable cause existed for their issuance. Accordingly, we affirm the trial court's order of suppression.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   February 27, 2013

Publish

19