

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-13-00045-CR

---

JONATHAN SHADDEN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2012-434,249, Honorable Jim Bob Darnell, Presiding

---

February 20, 2014

## OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Jonathan Shadden, was indicted for possession with intent to deliver methamphetamine in an amount of four grams or more but less than 200 grams,[1] and felon in possession of a firearm.[2] The indictment also included an enhancement allegation that appellant had been previously convicted of a felony.[3] Appellant filed a

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010).

[2] *See* TEX. PENAL CODE ANN. § 46.04(a)(1) (West 2011).

[3] *See id.* § 12.42(c)(1) (West Supp. 2013).

pretrial motion to suppress evidence, which was denied by the trial court. Following the denial of his motion, appellant entered into a plea-bargain agreement by which appellant agreed to plead guilty to the possession with intent to deliver charge,[4] and be sentenced to eight years' incarceration. However, the plea bargain was conditioned on appellant having the right to appeal the denial of his motion to suppress. The trial court accepted the agreement and entered judgment accordingly. On appeal, appellant brings one issue challenging the trial court's denial of his motion to suppress. We will affirm.

## Factual and Procedural Background

On February 10, 2012, Sergeant James Rohlik of the Lubbock Police Department received a phone call regarding a crime line tip that had been received over the internet. The anonymous tip indicated that appellant was assaulting a female at his residence, possibly had a weapon, and possibly had outstanding warrants for his arrest. On the basis of this tip, Rohlik dispatched three officers to appellant's residence to determine whether the tip was viable and to see if the alleged victim was in need of assistance. Due to the nature of the allegations in the tip, Rohlik did not feel that there was sufficient time to secure a warrant.

As they approached the residence, the officers did not see anything indicative of an assault occurring there. The officers either knocked on the door or rang the doorbell. Appellant answered the door, immediately "looked shocked," and started backing away from the door and around a nearby corner. As he backed away, appellant either

---

[4] As part of the bargain, the State agreed to dismiss the felon in possession of a firearm charge.

2

attempted to close the door or allowed the door to close on its own. The officers pushed the door open to keep appellant in view. As appellant continued around the corner, the officers entered the residence and detained appellant. Nothing in the residence appeared to indicate that an assault had occurred there. After he was detained, the officers asked appellant where the female was located. Appellant told them that she was in his bedroom. One of the officers, Corporal House, searched appellant's bedroom but did not locate the female. House returned to the living room and again asked appellant where the female was located. Appellant again advised that he last saw her in his bedroom, but added that she might have left without telling him. House again searched appellant's bedroom, this time, including the closet and under the bed. When House still failed to locate the female, he entered a bathroom that adjoined appellant's bedroom. After failing to locate the alleged victim in the bathroom, House began to search the bedroom on the opposite side of the bathroom. House found Rachelle Pereida, appellant's girlfriend, hiding in a closet in this second bedroom.

Upon locating Pereida, House informed her of the report of a possible assault. Pereida said that she was fine and that she was hiding in the closet because she is afraid of the police. After getting Pereida out of the closet, House escorted her through the bathroom and back into appellant's bedroom. Apparently, upon reentering appellant's bedroom, House noticed a partially covered gun on a dresser. While House cleared the bullets from the chamber of the gun, he noticed an open black felt bag on the dresser that contained plastic bags with a white, powdery substance inside. After he discovered what appeared to be illegal drugs, Pereida told House that she and appellant had been using methamphetamine in that bedroom earlier. When asked

3

about the gun and drugs, appellant acknowledged that he was aware that they were in his bedroom. The officers placed appellant under arrest for possession of a controlled substance and felon in possession of a firearm.

After hearing this evidence, the trial court denied appellant's motion to suppress. Following the trial court's denial of his motion, appellant entered into a plea bargain, which expressly reserved his right to appeal the denial of his motion to suppress. The trial court accepted the terms of the plea bargain, and entered judgment on those terms. Appellant did not request findings of fact and conclusions of law, and none were entered. Appellant timely filed notice of appeal.

By his appeal, appellant challenges the trial court's denial of his motion to suppress. However, by his argument, appellant's issue includes two components. First, appellant contends that the warrantless entry into appellant's residence was not permissible under the emergency doctrine exception to the warrant requirement. Second, appellant contends that, even if the entry was legal, the officers did not strictly circumscribe the scope of their search.

Standard of Review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The trial court's ruling on the motion to suppress will be affirmed if it is reasonably supported by the record and is correct under

4

any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009) (per curiam).

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457-58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a *de novo* review of the trial court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. We afford almost total deference to the trial judge's rulings on mixed questions of law and fact when the resolution of those questions depends on an evaluation of credibility and demeanor. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review *de novo* mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Johnston*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89. All purely legal questions are reviewed *de novo*. *Johnston*, 336 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *See Johnston*, 336 S.W.3d at 657. When, as here, the trial court makes no findings of fact and conclusions of law, we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling so long as those

5

findings are supported by the record. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *see Carmouche*, 10 S.W.3d at 327-28.

Officers' Warrantless Entry

Appellant initially contends that the trial court erred in denying his motion to suppress because the officers entered his residence without objectively reasonable facts sufficient to bring the entry under the emergency doctrine exception to the warrant requirement of the Fourth Amendment of the United States Constitution.

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. *See* U.S. CONST. amend. IV; *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008). The emergency doctrine is a recognized exception to the warrant requirement. *Laney v. State*, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003) (citing *Mincey*, 437 U.S. at 392). Under the emergency doctrine, officers may engage in conduct that would otherwise violate the Fourth Amendment so long as they are acting under a reasonable belief that their actions are immediately necessary to protect or preserve life or avoid serious injury. *Mincey*, 437 U.S. at 392; *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *Laney*, 117 S.W.3d at 860. The emergency doctrine applies when the police are acting, not in their "crime-fighting" role, but in their limited community-caretaking role to "protect or preserve life or avoid serious injury." *Laney*, 117 S.W.3d at 861 (quoting *Mincey*, 437 U.S. at 392). The officer's actions must be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 862 (quoting *Cady v.*

6

*Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). However, whether an actual emergency existed at the time of the officers' warrantless entry is irrelevant. *See Brimage v. State*, 918 S.W.2d 466, 482 (Tex. Crim. App. 1994). Rather, the State need only show that the facts and circumstances surrounding the entry and search were such that the officers reasonably believed an emergency existed that made obtaining a search warrant impracticable. *Id.*

In the present case, the police received an anonymous tip that appellant was assaulting a female at his residence and that he might be using a weapon. Rohlik testified that he dispatched officers to appellant's residence to "check [the] welfare" of the alleged victim. Rohlik also testified that, due to the nature of the allegations in the tip, there was not sufficient time to secure a search warrant. Thus, Rholik's reason for having officers dispatched to appellant's residence was to protect or preserve life and avoid serious bodily injury and not to conduct a criminal investigation. *See Mincey,* 437 U.S. at 392*; Shepherd,* 273 S.W.3d at 684*; Laney,* 117 S.W.3d at 860-61*.* The trial court was entitled to believe Rholik's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When the officers that went to appellant's residence knocked on appellant's door, they were all in uniform. When appellant answered the door, he appeared "shocked," and began backing away from the door. As he backed away from the door, he either pushed the door closed or allowed the door to close by itself. The combined effect of appellant backing away and the door closing was that the officers began to lose sight of appellant. Considering the nature of the dispatch and the officers' perspective on appellant's actions, we believe that the trial court could conclude that the officers' entry

into appellant's home was based on a reasonable belief that their actions were immediately necessary to protect or preserve life or avoid serious injury. *See Mincey*, 437 U.S. at 392; *Shepherd*, 273 S.W.3d at 684; *Laney*, 117 S.W.3d at 860.

Consequently, we conclude that the trial court did not err in determining that the officers had a reasonable belief that they needed to enter appellant's home to protect or preserve life or avoid serious injury.

### Discovery of the Controlled Substance

In the alternative, appellant contends that, even if the officers were justified in entering his residence without a search warrant, the trial court erred in denying his motion to suppress because the scope of the officers' search was not strictly circumscribed to confirm or dispel the existence of an emergency which authorized their entry into the residence. According to appellant, the justification for the officers to search appellant's residence ended, at the latest, when the officers discovered Pereida in the closet. Therefore, the discovery of the gun and methamphetamine occurred after the exigency of the emergency had been dispelled.

If the emergency doctrine applies, the police may seize evidence that is in plain view during the course of their legitimate emergency activities. *Shepherd*, 273 S.W.3d at 684; *Laney*, 117 S.W.3d at 862. This "plain view" seizure doctrine allows an officer to seize an item during a warrantless search if (1) the officer sees an item in plain view at a vantage point where he has the right to be, and (2) it is immediately apparent that the item seized constitutes evidence—that is, there is probable cause to associate the item with criminal activity. *Martinez v. State*, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000);

8

*State v. Elrod*, 395 S.W.3d 869, 879 (Tex. App.—Austin 2013, no pet.). Because such an officer is legitimately on the private premises, and so long as he has not exceeded the authority granted him by the exigency that legitimizes his presence in the first place, he may seize any item in plain view that probable cause tells him is contraband. *Elrod*, 395 S.W.3d at 879-80 (citing *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010)).

After entering appellant's residence, the officers restrained appellant in his living room.[5] They asked him where the female was located, and then performed a brief search of the room appellant identified. When no female was located in that room, House again asked appellant where the female was located. Appellant explained that he last saw her in his bedroom, but added that she might have left without telling him. House returned to appellant's bedroom, where he conducted a more thorough search. House eventually found Pereida hiding in a closet in another bedroom. All of House's efforts up to this point were clearly within the scope of the authority to search that was legitimized by the tip. *See Elrod*, 395 S.W.3d at 879-80.

After locating Pereida, House escorted her through the bathroom and back into appellant's bedroom. House testified that he noticed a partially covered gun on a dresser in appellant's bedroom. House testified that he had not noticed the gun before because he was searching for a person and not for evidence of a crime. House picked

---

[5] While appellant does not challenge the officers' actions in restraining him apart from contending that the officers were not authorized to enter his residence, we note that, due to the nature of the tip, the minimal restraint used by the officers was justified while they searched for the female for officer safety and to maintain the status quo. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997); *Lewis v. State*, 412 S.W.3d 794, 800 (Tex. App.—Amarillo 2013, no pet.).

9

up the gun to clear any bullets from the chamber of the gun when he noticed an open black felt bag on the dresser that contained plastic bags with a white, powdery substance inside. Based on his experience as a police officer, House testified that he believed that the substance he saw in the black felt bag was either methamphetamine or cocaine. Viewing this evidence in the light most favorable to the trial court's ruling, as we must, *see Wiede,* 214 S.W.3d at 25; *Carmouche,* 10 S.W.3d at 328, we conclude that House saw the contraband in plain view from a vantage point where he had a right to be, and had probable cause to associate the contraband with criminal activity. *See Martinez*, 17 S.W.3d at 685; *Elrod*, 395 S.W.3d at 879.

Consequently, we conclude that the trial court did not err in determining that the scope of House's search of the residence leading to the discovery of methamphetamine in plain view did not exceed the exigency that legitimized his presence in the first place. *See Dobbs*, 323 S.W.3d at 187; *Elrod*, 395 S.W.3d at 879-80*.*

## Conclusion

Having determined that the officers' entry into appellant's home was justified under the emergency doctrine and that the discovery of the methamphetamine was justified under the plain view doctrine, we hold that the trial court did not err in denying appellant's motion to suppress. As such, we overrule appellant's sole issue and affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.

10