**[J-44-2020] [MO: Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

COMMONWEALTH OF PENNSYLVANIA, : No. 69 MAP 2019
:
             Appellant : Appeal from the Order of the
: Superior Court at No. 1091 MDA
: 2018 dated March 7, 2019 Affirming
          V. : in Part and Reversing in Part the
: Order of the Franklin County Court
: of Common Pleas, Criminal
BETH ANN MASON, : Division, at No. CP-28-CR-0002352-
: 2017 dated June 26, 2018
          Appellee :
: ARGUED: May 19, 2020

**DISSENTING OPINION**

**JUSTICE DONOHUE**                   **DECIDED: March 25, 2021**

At the criminal trial of Appellee Beth Ann Mason ("Mason"), the Commonwealth sought to introduce evidence obtained from the video and audio recording captured by a camera that father, Eric Valle, installed in the bedroom where his children slept in order to monitor Mason, the nanny he employed to care for the children. Mason filed a motion to exclude the evidence pursuant to Section 5721.1(b)(1) of the Wiretap and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701-5721.1(b)(1) (the "Wiretap Act"), which the trial court granted and the Superior Court affirmed as to the audio portion of the recording. The Majority's decision to reverse the Superior Court's determination rests principally upon its announcement that as a matter of law, a nanny has no objectively reasonable expectation of privacy in the bedroom of a child in the home in which she is employed.

For the reasons set forth herein, I do not agree and would instead affirm the decision of the Superior Court.

To begin, I take no position on which party here had the burden of proof with regard to suppression of the audio/video recording from the camera in the child's bedroom. I instead agree with the Superior Court's view that in this case it does not matter. Based upon the factual record developed below, Mason argues persuasively that her actions reflect that she had an actual and subjective expectation of privacy. Mason's Brief at 6. First, at no time did Valle advise Mason of the presence of a camera or other electronic surveillance. (RR 56a-57a). Furthermore, Valle testified that at the outset of Mason's employment, he expressly advised her that the children were not to be disciplined by corporal punishment. (RR 58a). As such, her subsequent actions directly to the contrary reflect that she plainly believed that she was doing so in private, without any surveillance or any risk to her job. Mason's Brief at 6. Indeed, even after Valle questioned her about incidents of yelling and hitting reported to him by one of his children, (RR 44a), the surveillance suggested that Mason continued her wrongful behavior.

The Superior Court majority cited to substantial authority in support of the contention that Mason, like other employees, has a reasonable expectation of privacy in certain areas of their workplace.

> "Appellate courts have held that employees have a reasonable expectation of privacy in certain areas of their workplace." *Commonwealth v. Cruz*, 166 A.3d 1249, 1255 (Pa. Super. 2017); *see City of Ontario v. Quon*, 560 U.S. 746 (2010) (recognizing a heightened level of privacy in the workplace); *O'Connor v. Ortega*, 480 U.S. 709 (1987) ("As with the expectation of privacy in one's home, [an expectation of privacy] in one's place of business is 'based upon societal expectations that have deep roots in the [Fourth] Amendment.'") (quotation omitted). Overnight guests in

> another's home also have a long-recognized expectation of
> privacy. *See Minnesota v. Olson*, 495 U.S. 91, 98 (1990).

*Commonwealth v. Mason*, 2019 WL 1084210, at *4 (Pa. Super. Mar. 7, 2019). The court

also cited to cases from other jurisdictions specifically holding that babysitters have a

socially acceptable expectation of privacy in the parent's home. *Id.* (citing *People v.*

*Moreno*, 2 Cal.App.4th 577, 583-85 (Cal. Ct. App. 1992) (recognizing that since

babysitters have the right to exclude others from the household, they enjoy a level of

privacy in a home beyond even that of an overnight guest); *State v. Anonymous*, 480 A.2d

600, 608-09 (Conn. Sup. Ct. 1984) (reasoning that "[a]s the caretaker of the child, [the

babysitter] undoubtedly had a socially acceptable expectation of privacy [in the home].");

*State v. Elrod*, 395 S.W.3d 869, 878 (Tex. Ct. App. 2013) (holding that a babysitter had

an expectation of privacy because she "had dominion and control over the residence and

had the right, perhaps even the duty, to exclude others from the home")).[1]

---

[1] In this case, I neither advocate in support of, or oppose, Justice Wecht's call to overturn *Agnew v. Dupler*, 717 A.2d 519 (Pa. 1998). Dissenting Op. (Wecht, J.) at 5. As *Agnew* remains at present good law in this Commonwealth, however, it is clearly relevant to the issues presented here. The Superior Court cited to these cases in which individuals (including, inter alia, an employee or a babysitter) have a "reasonable expectation of privacy" at his or her place of business or in a family's home, precisely because under *Agnew* the concepts of "reasonable expectation of privacy" under the Fourth Amendment and "justifiable expectation of non-interception" under the Wiretap Act are **synonymous** with one another. *See Agnew,* 717 A.2d at 523 ("In determining whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, **for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy."**) (emphasis added); *see also PSP v. Grove*, 161 A.3d 877, 901 (Pa. 2017) (repeating *Agnew*'s declaration that when applying the Wiretap Act, "one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy").

As a result, under *Agnew* and *Grove*, when one reasonably expects that their oral communications are being made in private, one likewise has a justifiable expectation that

The Majority, without response to the authority cited by the Superior Court or reference to any contrary authority from other courts, holds that as a matter of law, "it is objectively reasonable to conclude that persons in [Mason's] position do not have a justifiable expectation that their oral communications will not be subject to interception while they are in a child's bedroom." Majority Op. at 18. According to the Majority, "the expectation that a childcare worker is going to be recorded in their employer's home is so ubiquitous in our society that we have a name for it [nanny cam]." *Id.* at 18-19.

I strongly disagree that, as a matter of law, anyone accepting employment as a nanny forfeits his or her right of privacy in the child's bedroom. The Majority does not explain why a nanny must assume that she will be surreptitiously spied upon by her employer after being entrusted with the care of that employer's children, or why the nanny should not assume instead that a parent who placed him or her in this position of responsibility also trusted that appropriate care would be given to the children. There is nothing in the record to support the notion that an expectation of distrust by parents is "ubiquitous" in our society, that all parents surveil their child's caregiver, or even that most babysitters (of varying ages) are aware of the general utilization of such surveillance devices. But even if one assumes broad awareness of the existence of nanny cams, knowledge of the device's capabilities (e.g., whether they are activated by motion detectors, whether they capture both video and audio, etc.) is certainly not universal. The

_____

those communications will not be intercepted. Inversely, one who lacks a belief that their conversation is private should necessarily assume that their conversation is being intercepted. The cases cited by the Superior Court, which demonstrate that as an employee and a babysitter Mason had a socially acceptable expectation of privacy in the parent's home, are thus directly relevant to whether she had a justifiable expectation that her oral communications would not be intercepted.

Majority's pronouncement sounds like a legislative finding adduced after hearings. Instead, the Majority assumes facts to support a sweeping judicial policy choice.

The Majority also does not indicate whether a nanny should expect to be electronically monitored in other locations in the home (e.g., on a living room couch where the child naps), and/or whether their new rule extends to other caregivers (e.g., grandparents). It is not a broad leap to assume that it does.

In my view, privacy principles require that to validate evidence from the use of surveillance devices in criminal proceedings, a parent utilizing such a device to monitor a nanny must advise the nanny that it has been installed, where it is located, and that it is recording his or her words and actions. Given appropriate notice, issues relating to the nanny's privacy rights and the admissibility of evidence under the Wiretap Act would be avoided. Candor about the surveillance may serve to prevent unwanted behavior if a parent believes that trust may have been misplaced when employing the nanny. It also allows the nanny to decide whether he or she is willing to give up privacy expectations because of his or her occupation in the home of another.

For these reasons, I respectfully dissent. I would affirm the order of the Superior Court.