# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00227-CR

**Terrance Damien Ford, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT NO. 64416, THE HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Terrance Damien Ford of the offense of possession of 400 grams or more of a controlled substance with intent to deliver, and assessed his punishment at confinement for 60 years in the Texas Department of Criminal Justice and a $250,000 fine. *See* Tex. Health & Safety Code § 481.112(a), (f). On appeal, appellant complains about the denial of his pretrial motion to suppress, the admission of evidence of his prior criminal history, and the imposition of court-appointed attorney's fees. Sustaining appellant's third point of error, we modify the judgment of conviction and, as modified, affirm the judgment.

## BACKGROUND

Officers from the Killeen Police Department went to 3701 YS Pak Court, Apartment H, to search for a female fugitive who had listed that address on her bail bond records. Two officers approached the front door of the residence while another officer covered the rear of the

residence. As they approached the front door, an adult male, later identified as appellant, opened the inner door behind the outer security door.[1] The officers could immediately smell the distinctive odor of burning marijuana coming from inside the apartment and could see lingering smoke inside the room.

The officers, in standard police uniform, identified themselves to appellant and advised him that they were looking for the fugitive female. Appellant informed them that she did not live there and he did not know who she was. To further investigate the fugitive's whereabouts, one of the officers, Officer Richard Bradley, asked appellant to produce identification. The officer could see two other males, later identified as brothers Keith Lamar Warren and Kevin Lamar Warren, in the living room. After the officer's request for identification, appellant walked back into the living room area and Officer Bradley saw all three men immediately go into the kitchen. The officer could not see into the kitchen but heard shuffling and movement noises coming from the kitchen area. Appellant returned to the door without identification. When Officer Bradley again asked for identification, appellant went upstairs indicating he needed to retrieve it from there.

Becoming concerned for officer safety, Officer Bradley tried the security door and found it to be locked. Appellant then returned downstairs, still without identification. The officer asked a third time for identification and appellant retrieved a photo identification from a cigar box on the television just inside the doorway. Appellant then removed keys from his pocket, unlocked

---

[1] The record reflects that this outer security door, called the "burglar bar door" by the parties, consisted of metal bars and a mesh screen that allowed the passage of air.

the security door, opened the door, stood aside, and motioned for the officers to enter the apartment.[2]

The officers entered the apartment and Officer Bradley again advised the men that they were looking for the female fugitive. He also asked about the marijuana smoke in the room. At that point, appellant produced a baggie of marijuana and gave it to Officer Bradley, stating that it was all that they had. The men indicated that they had been smoking it while watching a game on television.

Concerned that all three men had quickly gone into the kitchen as soon as they heard the name of the fugitive the police sought, and unaware of whether others were present in the apartment, Officer Bradley went into the kitchen area to check for the fugitive and conduct a protective sweep. Upon entering the kitchen, the officer immediately saw a large Pyrex measuring cup that contained a milky white liquid next to the sink. He also observed that one of the doors to a cabinet above the stove was open and inside he saw a box of Ziploc baggies, a digital scale, and a clear plastic container that had a white powder residue on it. There was a portion of the kitchen cabinetry that formed an elbow or L shape and, based on his prior experience of finding a person concealed in such a cabinet, Officer Bradley believed it might be large enough to hide a person. He opened the cabinet door to check and saw an open shoe box containing four Pyrex measuring cups with a white crusty residue on them. From his years of law enforcement experience, the officer recognized the items he observed in the kitchen as those used in the manufacture of crack cocaine. At this time, Officer Bradley terminated any further protective sweep of the kitchen and apartment.

---

[2] This testimony was contradicted at the suppression hearing by appellant's testimony. Appellant testified that he only unlocked and opened the security door to provide the officer with his identification but Officer Bradley put his foot in the door, pulled the door open, and, along with the other officer who had her gun drawn, forced his way into the apartment.

After consulting with his sergeant, Officer Bradley notified a detective with the Killeen Police Organized Crime Unit who, based in part on the observations of Officer Bradley, obtained a warrant to search appellant's apartment. During the search conducted pursuant to that warrant, officers discovered 3.2 kilograms of cocaine, 602 grams of marijuana, 330 grams of promethazine, a hand gun, and various drug paraphernalia. This discovery, in combination with additional police investigation, prompted the officers to obtain a subsequent search warrant for another apartment located in the same complex, Apartment C, where one of the Warren brothers resided. The search conducted pursuant to that warrant yielded an additional 30 grams of cocaine, another handgun, and more drug paraphernalia.

Appellant and both Warren brothers were arrested that night and subsequently each charged by indictment with possession of 400 grams or more of a controlled substance, namely cocaine, with intent to deliver. All three filed separate pretrial motions to suppress, and each adopted the motions filed by his co-defendants. The motions were consolidated for the suppression hearing.[3] The trial court denied all of the defense motions to suppress. A jury subsequently convicted appellant of the offense as charged in the indictment, and assessed his punishment at 60 years' imprisonment and, in addition, assessed a $250,000 fine.

---

[3] The trial court actually conducted two hearings on the motions to suppress. In the first hearing, the defendants sought to suppress evidence derived from the warrantless entry into appellant's apartment. In the second hearing, conducted on two separate days, the defendants sought to suppress evidence seized during the searches of appellant's apartment and Warren's apartment that were conducted pursuant to the subsequently obtained search warrants.

## DISCUSSION

### Denial of Motion to Suppress

In his first point of error, appellant contends that the trial court erred in denying his motion to suppress because the evidence was seized as a result of an unlawful warrantless entry into his apartment "without consent, probable cause, or exigent circumstances."

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, applying a bifurcated standard of review where we give almost total deference to a trial judge's findings of historical fact and credibility determinations that are supported by the record, but review questions of law de novo. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We will affirm the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011); *see* U.S. Const. amend. IV; *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990). The entry into a residence by police officers is a "search" for purposes of the Fourth Amendment. *Limon*, 340 S.W.3d at 756; *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). A warrantless police entry into a residence is presumed unreasonable unless the entry falls within one of a well-defined group of exceptions. *Limon*, 340 S.W.3d at 756; *Valtierra*, 310 S.W.3d at 448.

Voluntary consent is one such exception. *Rodriguez*, 497 U.S. at 181; *Limon*, 340 S.W.3d at 756; *Valtierra*, 310 S.W.3d at 448. An owner's or occupant's voluntary consent

5

makes the entry into a residence by police officers constitutionally "reasonable." *Rodriguez*, 497 U.S. at 181; *Valtierra*, 310 S.W.3d at 448. Consent may be given orally or by action, or may be shown by circumstantial evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011); *Valtierra*, 310 S.W.3d at 448. The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Weaver*, 349 S.W.3d at 526; *Valtierra*, 310 S.W.3d at 448. The State must prove voluntary consent by clear and convincing evidence. *Weaver*, 349 S.W.3d at 526; *Valtierra*, 310 S.W.3d at 448.

At the suppression hearing, the trial court heard testimony from Officer Bradley that appellant invited the officers into his apartment by unlocking the security door, opening the door, motioning for the officers to come in, and stepping back to accommodate their entry. In his brief, appellant asserts that the officers came into his apartment without permission, presumably based on his testimony at the suppression hearing. However, at a suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Further, unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman*, 955 S.W.2d at 89; *Miller v. State*, 335 S.W.3d 847, 854 (Tex. App.—Austin 2011, no pet.). The trial court made fact findings and conclusions of law that Officer Bradley was lawfully at appellant's apartment to look for the female fugitive and that he properly entered the apartment

6

only after being invited into the residence by appellant. *See Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004) (consent to enter home could be inferred from defendant's action of motioning officer to come forward). These findings are supported by the record.

Consent to enter a residence, however, does not, without more, provide consent for a police officer to search the entire residence or objects therein. *Valtierra*, 310 S.W.3d at 448. The scope of a search is usually defined by its expressed object. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Weaver*, 349 S.W.3d at 526. The "standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251; *Weaver*, 349 S.W.3d at 526.

Here, appellant invited the police officers into his apartment during a conversation in which he was advised that the police were at his apartment looking for a female fugitive. Based on the exchange between Officer Bradley and appellant, a reasonable person would have understood that the purpose for which the officers entered the apartment, with appellant's permission, was to search for the fugitive. After entering the apartment, Officer Bradley reiterated the officers' purpose of searching for the fugitive. He then went into the kitchen—the area where he saw the men go immediately after he initially advised appellant that they were looking for the fugitive and where he then heard shuffling and movement—to check for the fugitive. The officer saw contraband in plain view and observed a kitchen cabinet that he thought might possibly conceal a person. He opened the cabinet to check for the fugitive and found additional contraband, and immediately ceased this activity. He did not search the kitchen or apartment any further. His search was consistent with the

consent appellant gave when he invited the officers into his apartment knowing they were looking for the fugitive. *See Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) ("If an officer is invited or permitted to come into a house for a particular purpose (such as to look for a particular person or object), the scope of the consent to enter normally includes consent to search those areas in which the person or object would reasonably be found." (quoting *Valtierra*, 310 S.W.3d at 450)).

Another exception to the necessity of a search warrant is a "protective sweep" performed by police officers. *Maryland v. Buie*, 494 U.S. 325, 327 (1990). A protective sweep is a "quick and limited search of premises . . . conducted to protect the safety of police officers or others." *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000). The sweep must not be a "full search of the premises" and the searching officers must possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 816.

Officer Bradley testified that as he approached the apartment, the inner door was opened and he smelled the odor of burning marijuana and saw lingering smoke inside. Once he advised appellant that they were looking for the female fugitive, he saw appellant and the two other men move quickly into the kitchen, where he was unable to observe them, and he then heard shuffling and movement. After entry into the apartment on appellant's invitation, the three men admitted smoking marijuana and appellant relinquished possession of more of the illegal substance. Officer Bradley expressed that under these circumstances—the quick retreat to the kitchen in response to the mention of the fugitive's name, the noises he subsequently heard coming from that area, and the presence of narcotics—he determined that he needed to perform a security sweep for

8

officer safety. The officer testified to specific and articulable facts permitting the trial court to find that the officer had an objectively reasonable belief that a person in the kitchen posed a danger to him or other persons in the apartment, justifying his entry into the kitchen for a brief search for any other persons present. *See Ramirez v. State*, 105 S.W.3d 730, 743 (Tex. App.—Austin 2003, no pet.) (officer was permitted to sweep garage room in order to establish that no individuals were present). Officer Bradley's search was limited to a protective sweep of the kitchen area—where the men scurried and he heard the suspicious activity—and was limited to those places where he believed a person may be found.

In addition to the fact findings and conclusions of law discussed previously, the trial court made fact findings and conclusions that Officer Bradley (1) properly opened the kitchen cabinet door to search for a concealed person, (2) conducted a proper protective sweep of the interior of the apartment, and (3) made proper plain-view observations of narcotics and narcotics paraphernalia. The court further concluded that the observations Officer Bradley made established probable cause for the search warrant of appellant's apartment and that the subsequent search of appellant's apartment, along with the investigation conducted in connection with that search, yielded additional information and evidence that established probable cause to search Apartment C, Kevin Warren's apartment. *See State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (probable cause exists when, under totality of circumstances, there is fair probability that contraband or evidence of crime will be found at specified location at time warrant is issued). The record supports these findings and conclusions.

Viewed in the light most favorable to the trial court's ruling, the record reflects that appellant invited the police into his apartment when they advised him that they were searching for the female fugitive and that once inside Officer Bradley's search did not exceed the permissible scope of appellant's consent nor that of a protective sweep. The search conducted during the protective sweep and pursuant to appellant's consent yielded evidence sufficient to establish probable cause to obtain a search warrant for appellant's apartment. The execution of that search warrant yielded further evidence that, together with information obtained in the course of the connected police investigation, established probable cause to obtain a search warrant for Warren's apartment. Therefore, we conclude that the trial court did not abuse its discretion in denying appellant's motions to suppress.[4] We overrule appellant's first point of error.

### Punishment Evidence

In his second point of error, appellant asserts that the trial court erred in admitting evidence of his prior convictions during the punishment phase of trial because the evidence was insufficient to prove that he was the person convicted.

Section 3(a) of Article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of a non-capital criminal trial and allows the

---

[4] In his brief, appellant also argues that the State failed to demonstrate both probable cause and exigent circumstances to justify the warrantless entry into his apartment. The trial court made no fact findings or conclusions concerning exigent circumstances. Because we conclude that the trial court's ruling was correct under both the consent and protective sweep exceptions to the warrant requirement, we do not address exigent circumstances. *See Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009) (appellate court will affirm trial court's ruling on motion to suppress if it is reasonably supported by record and is correct under any theory of law applicable to case); *see also* Tex. R. App. P. 47.1.

admission of any evidence the trial court "deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, . . . [and] evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant." *See* Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). We review a trial court's decision to admit punishment evidence for an abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 802 (Tex. Crim. App. 2010).

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.* The State may prove both of these elements in a number of ways, including documentary proof that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 921–22. Any type of evidence, documentary or testimonial, might suffice. *Id.* at 922. The factfinder looks at the totality of the evidence to determine whether the State proved the prior conviction beyond a reasonable doubt. *Id.* at 923.

Here, the State offered three exhibits containing certified records from the Superior/State Court of Dougherty County, Georgia. *See* Tex. R. Evid. 803(22) (judgment of previous conviction not excluded by hearsay rule), 902(1) (public documents under seal are self-authenticating). The documents in State's Exhibit 72 show that "Terrance D. Ford," a black male with a date of birth of June 25, XXXX and social security number ending in 1927, was found

11

guilty of three counts of Terroristic Threats on May 6, 1996.[5] The documents in State's Exhibit 73 show that "Terrance D. Ford," a black male with a date of birth of June 25, XXXX and social security number ending in 1927, was found guilty of the offense of Sale of Marijuana on May 12, 1998. The documents in State's Exhibit 74 show that "Terrance D. Ford," a black male with a date of birth of June 25, XXXX and social security number ending in 1927, was found guilty of four offenses—Terroristic Threats and Acts, Simple Battery, Obstruction of an Officer, and Interference with a 911 Emergency Call—on September 8, 1999.

Another exhibit, State's Exhibit 75, admitted without objection, contains book-in documents maintained by the Bell County jail. The first page contains a photograph of appellant, taken at the time of his book-in for this offense, and the documents provide the following information: "Name: Ford, Terrance Damien;" "DOB: [XXXX]-06-25;" "Gender: M;" "Race: B;" "POB: Albany, Georgia;" and "Primary SSN: [XXX-XX-1927]." Charles Cox, custodian of records for the jail, testified that this information was obtained from appellant at the time of his book-in for this offense. He further testified that appellant's birth date is June 25, XXXX, his place of birth was Albany, Georgia, and his social security number is XXX-XX-1927.

Thus, State's Exhibits 72, 73, and 74, reflect that a person with the same first name, middle initial, last name, gender, race, date of birth, and social security number as appellant was convicted in Georgia of the offenses listed.[6] Combined with State's Exhibit 75 and Officer Cox's

---

[5] The exact date of birth, including the year, and all digits of the social security number are contained within the exhibits in the record; however, we do not list them in our opinion.

[6] We also note that Exhibits 72, 73, and 74 each contain a signature of the person convicted. The trial court observed that the exhibits contained "Terrance Ford's" signature and the State reminded the court that State's Exhibit 48, the lease agreement for appellant's apartment, admitted

testimony, these documents were sufficiently linked to appellant, who was born in Georgia, such that the trial court could conclude that these exhibits contain sufficient information to establish both the existence of prior convictions and appellant's identity as the person convicted. The trial court did not abuse its discretion in admitting this evidence. We overrule appellant's second point of error.

## Attorney's Fees

In his third point of error, appellant contests the trial court's order for the repayment of court-appointed attorney's fees in the judgment of conviction. When the trial court sentenced appellant in open court after receiving the jury's punishment verdict, she ordered him to pay "any court appointed attorney's fees if you are able to pay those upon your release." The written judgment of conviction reflects the imposition of "$4,500.00 Attorney Fees."

A trial court's authority to order a defendant to repay the cost of court-appointed legal counsel is expressly conditioned on the court determining that the defendant has the financial resources and ability to pay. Tex. Code Crim. Proc. art. 26.05(g). The defendant's financial resources and ability to pay are explicit critical elements under article 26.05(g) that must be supported by the record evidence. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010).

The record reflects that the trial court found appellant to be indigent prior to trial and appointed counsel to represent him. Once an accused is found to be indigent, he is presumed to remain so through the proceedings absent proof of a material change in his circumstances. Tex. Code Crim. Proc. art. 26.04(p); *Mayer*, 309 S.W.3d at 557. As the State acknowledges, nothing in

during the guilt-innocence phase, contained appellant's signature.

the record indicates a change in appellant's financial circumstances or demonstrates that appellant has the ability to pay court-appointed attorney's fees. Thus, as the State concedes, the trial court erred in ordering the payment of attorney's fees in its oral pronouncement of sentence and in its written judgment of conviction. We sustain appellant's third point of error.

When the evidence does not support the order to pay attorney's fees, the proper remedy is to delete the order. *Mayer*, 309 S.W.3d at 557. Accordingly, we modify the judgment of conviction to delete the order for repayment of $4,500.00 attorney's fees.

## CONCLUSION

We find no abuse of discretion in the denial of appellant's motion to suppress or the admission of evidence of his criminal history, but do find that the trial court erred in ordering the repayment of court-appointed attorney's fees. Accordingly, we modify the judgment as noted above and, as modified, affirm the judgment of conviction.

_____
Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Modified and, as Modified, Affirmed

Filed:  March 20, 2014

Do Not Publish

14