# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00670-CR

**Orval Roger Miller Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 13530, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## O P I N I O N

Appellant Orval Roger Miller Jr. pleaded guilty to three counts of possession of child pornography. A jury assessed punishment at three years' imprisonment for count one, ten years' imprisonment for counts two and three, and a $5,000 fine for each count. Upon recommendation of the jury, the district court suspended imposition of the sentence for counts two and three and placed Miller on community supervision for ten years following his imprisonment on count one. In two issues on appeal, Miller asserts that the district court abused its discretion by denying his motion to suppress because, in Miller's view, the evidence against him was obtained in violation of (1) his constitutional right to be free from unreasonable searches and seizures and (2) article 38.23 of the Texas Code of Criminal Procedure. We will affirm the judgment.

## BACKGROUND

At the hearing on the motion to suppress, the district court heard evidence that on May 4, 2007, Eric Edwards, who at the time was an officer with the Elgin Police Department,[1] entered the department's patrol room in order to print out a copy of his daily activity report from his personal thumb drive.[2] The patrol room, Edwards testified, was accessible to "all the patrol officers, all Elgin PD employees," dispatch, law enforcement officers from other counties, the media, and animal-control personnel.

The patrol room had a computer that, according to Edwards, was located "at the front desk entering the patrol room." Edwards testified that when he sat down at this computer to print out his report, he noticed "another thumb drive in the computer." Edwards did not know to whom the drive belonged: "I didn't notice any names on it or markings. I [had] never seen it before." In an attempt to identify the owner of the thumb drive so that he could return it to him, Edwards logged onto the computer and opened the drive. After doing so, Edwards saw several folders on the drive, including one that apparently contained pictures. Upon opening this folder, Edwards found a picture of an unclothed adult female. Considering the picture to be pornographic and offensive, Edwards "exited out of the thumb drive, pulled it out of the computer, and secured it for Lieutenant Corbett," his supervisor. Lieutenant Corbett gave the drive to Assistant Police Chief Phillip Taylor, who searched the drive and discovered what he believed to be child pornography.

---

[1] By the time of the hearing, Edwards was serving as Chief of Police in Bartlett.

[2] Sergeant Wesley Hensley of the Office of the Attorney General testified during the suppression hearing that a thumb drive, also known as a flash drive, is a thumb-shaped "digital device you can store media on . . . any kind of records, documents, photographs, videos."

2

Taylor then turned the drive over to the Office of the Attorney General (OAG), and an investigation commenced.

The investigation was led by Sergeant Wesley Hensley of the OAG. Hensley testified that at the beginning of the investigation, he was informed by the Elgin Police Department that they suspected that the drive belonged to Miller, then an officer with the department. After performing an initial "preview" examination of the thumb drive, Hensley and his team decided to speak with Miller to confirm whether the drive belonged to him.

Hensley testified that during the interview, which took place at the Elgin Police Department, they obtained verbal and written consent from Miller to perform a "full forensics search" of the thumb drive and also permission to go to Miller's house and search both his laptop and desktop computers.[3] Hensley also testified that Miller "was told in the very beginning of the interview that he was not under arrest, that he was free to leave at any time, did not have to talk to us, and he also wasn't under indictment or anything like that." Hensley further testified that to the best of his knowledge, Miller never revoked his consent. Miller's computers were subsequently searched, and child pornography was found on the thumb drive and the laptop computer.

During his interview with Miller, Hensley learned of Miller's experience with computers. According to Hensley, Miller knew how to transfer files to a thumb drive, create different folders on the drive, and burn files from the drive onto a CD. Additionally, Miller had a Yahoo! account with a user name and had used his account to check email and chat with his wife and brother. When asked if it appeared to him that Miller "had a pretty solid understanding of how

---

[3] A transcript of this interview was admitted into evidence, as were three consent-to-search forms that contained Miller's signatures. Each form concerned a separate item to be searched.

computers work and that he utilized them at an advanced level," Hensley testified, "Yes, ma'am." Hensley also recounted how Miller had told him that he had left his thumb drive at the police department on three prior occasions, that on those occasions the drive would usually show up in his inbox within a day or two, and that he had agreed to let Lieutenant Corbett place the drive in his inbox if it was ever found.

Miller also testified at the suppression hearing. Miller admitted that the thumb drive belonged to him and that he had accidentally left it in the patrol room on the day when Edwards had found it. Miller claimed that he had an expectation of privacy in the thumb drive. According to Miller, he used the thumb drive to store his police activity reports and, like other officers, would sometimes take the drive into the patrol room to print out his reports from the computer. Miller testified that he considered the patrol room where he had left the drive to be a private area because "the way I understood it nobody was allowed to come back there unless they were escorted by a police officer." Miller also considered the thumb drive to be his private possession and testified that he did not share it with anyone else or give anyone permission to look through it. Comparing his thumb drive to his wallet, Miller believed that just because he had allowed other officers to return the thumb drive to his inbox if it was found did not mean that he had given other officers permission to search the drive.

Miller further testified that during his interview with the investigators from the Office of the Attorney General, he "somewhat felt like" he was in custody. Miller explained that prior to the interview, one of the investigators took Miller's weapon from him. Also, one of the interviewers, Miller claimed, became "very antagonistic and accusatory" as the interview proceeded. Miller recalled, "I was expecting to be arrested at any time." Miller admitted to signing the consent-

4

to-search forms but claimed that he only did so because "if I didn't sign the consent forms, I was going to get served with a search warrant anyway." Based on the above circumstances, Miller agreed with counsel's characterization of his consent as not being "truly free and voluntary."

On cross-examination, Miller acknowledged that his thumb drive did not have identifying markings on it, such as his name, address, phone number, or badge number. Miller claimed that at the time the drive was found, the initials of a former employer, the Austin Community College Police Department ("ACCPD") were written on the drive in "faded red ink." Miller believed that because of this marking, employees at the department who had found the drive on prior occasions might have been able to surmise that the drive belonged to him. However, Miller admitted that this marking did not necessarily identify the drive as his. Miller testified that Lieutenant Corbett had also worked at ACC, and Miller agreed with the prosecutor's statement that "ACC could stand for a lot of things." Miller also agreed with the prosecutor's statement that "all the other officers were using thumb drives." Additionally, Miller acknowledged that he did not actually know how the drive had been identified as belonging to him on the prior occasions that he had left it at the department and that, in fact, it could have been opened on those other occasions.

Miller also acknowledged that the patrol room where his thumb drive was found was accessible to all law enforcement officers, including those from other counties, and also by animal control personnel and citizens who came to the department to file a complaint, as long as they were escorted into the room by police officers. Miller further acknowledged that he did not keep his thumb drive in a locked case and that it was not password protected.

Regarding the interview, Miller admitted that he was not in handcuffs at the time, he was not told that he was under arrest or that the issuance of a search warrant was imminent,

nobody had prevented him from leaving during the interview, and he was not arrested until two or three months later. Miller further acknowledged having read a copy of the department's personnel policies, which included a policy stating that "[c]omputers are the property of the City of Elgin and any screen saver, graphics must be approved by the chief of police." After having Miller recite this policy to the court, the prosecutor asked Miller, "So you knew you didn't have any reasonable expectation of privacy to the department's computer, correct?" Miller answered, "Yes, ma'am."

At the conclusion of the hearing, the district court issued its ruling on Miller's motion to suppress: "First of all, the Court finds you had no standing. Second of all, the Court denies the motion in its entirety. That's it."

Subsequently, Miller pleaded guilty to the charges against him and the case proceeded to trial on punishment. After the jury rendered its verdict, noted above, the district court sentenced Miller accordingly. This appeal followed.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006). However, for mixed questions of law and fact that do not fall within that

6

category, a reviewing court conducts a de novo review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).

At the suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, the trial court may choose to believe or to disbelieve all or any part of the witnesses' testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *Flores v. State*, 177 S.W.3d 8, 13-14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). When the trial court fails to make explicit findings of fact, we imply fact findings that support the trial court's ruling so long as the evidence supports these implied findings. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

**ANALYSIS**

**Fourth Amendment and Article I, § 9**

In his first issue, Miller asserts that his motion to suppress should have been granted because the evidence was obtained in violation of his right under the federal and state constitutions to be free from "unreasonable searches and seizures." *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. In Miller's view, he had a "reasonable expectation of privacy in the computer thumb drive, and law enforcement's warrantless searches of the contents of the thumb drive were per se unreasonable." *See United States v. Barth*, 26 F. Supp. 2d 929, 936 (W.D. Tex. 1998) (concluding that "the Fourth Amendment protection of closed computer files and hard drives is similar to the protection it affords a person's closed containers and closed personal effects"). Miller further

contends that his later consent to the searches of his thumb drive and other computers was "tainted by the earlier Fourth Amendment violation."

The purpose of both the Fourth Amendment and Article I, § 9, "is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions." *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993). Thus, an accused has standing to challenge the admission of evidence obtained by a governmental intrusion only if he had a "legitimate expectation of privacy" in the place subject to intrusion by the government. *See Rakas v. Illinois*, 439 U.S. 128 (1978); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Davidson v. State*, 249 S.W.3d 709, 725 (Tex. App.—Austin 2008, pet. ref'd). The accused "has the burden of proving facts establishing a legitimate expectation of privacy." *Villarreal*, 935 S.W.2d at 138 (citing *Calloway v. State*, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988)). "To carry this burden, the accused must normally prove: (a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable." *Id.* (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *Richardson*, 865 S.W.2d at 948-949).

The district court would not have abused its discretion in finding that Miller did not carry his burden of proof on either requirement. First, the record supports a finding by the district court that Miller, by his conduct, did not exhibit an actual subjective expectation of privacy in the thumb drive. Miller testified that on three prior occasions, he had left his thumb drive in the patrol room, an area that was accessible to other law enforcement officers, animal control personnel,

8

and citizens who were accompanied by officers. Although Miller testified that he considered the thumb drive to be his "private possession," he also testified that other than the initials "ACCPD," the thumb drive did not contain external identifying marks such as his name, badge number, address, or telephone number. Furthermore, the evidence tended to show that Miller possessed advanced computer knowledge. Yet by his own admission, Miller did nothing to prevent others from accessing the thumb drive, such as protecting it with a password, encrypting the data, or even placing the drive in a locked case. In fact, Edwards testified that when he found the drive in the patrol room, it was already "in" the computer—a computer which was the property of the Elgin Police Department. The district court also could have reasonably inferred that Miller, by expressly giving Lieutenant Corbett permission to return the drive to his box, actually expected his co-workers to ascertain whether the drive belonged to him. Because of the lack of identifying marks on the drive, the district court could have reasonably inferred that Miller was aware that his co-workers might attempt to identify to whom the drive belonged by opening it.

In summary, the record reflects that Miller, on multiple occasions, left the thumb drive unattended, unidentified, and unsecured in an area open to his co-workers and other individuals. Thus, on this record, the district court would not have abused its discretion in finding that Miller, by his conduct, did not exhibit an actual subjective expectation of privacy in the drive.

Additionally, even assuming that Miller had exhibited a subjective expectation of privacy in the drive, the district court would not have abused its discretion in finding that such an expectation was not objectively reasonable under the circumstances. There are several factors that courts may consider in determining whether an expectation of privacy is objectively reasonable,

9

including: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002) (citing *Villarreal*, 935 S.W.2d at 138). "This list of factors is not exhaustive, however, and none is dispositive of a particular assertion of privacy; rather, we examine the circumstances surrounding the search in their totality." *Id*. Although the above factors "are more applicable when discussing the expectation of privacy in a place than in discussing the expectation of privacy in a computer hard drive or even a closed container," *Rogers v. State*, 113 S.W.3d 452, 457 (Tex. App.—San Antonio 2003, no pet.), some of the factors are relevant here.

The first factor supports Miller's position. Miller testified that the thumb drive was his "private possession," and the State did not dispute this fact. Thus, Miller had a possessory interest in the thumb drive.[4] However, the other relevant factors weigh against a finding of objective reasonableness. Although Miller testified that he did not share his thumb drive with others, he also testified that he had given Lieutenant Corbett permission to return the thumb drive to his box if it

---

[4] The State asserts on appeal that Miller "voluntarily abandoned" his possessory interest in the thumb drive by leaving it in the patrol room. The Fourth Amendment does not protect those who voluntarily abandon property. *Abel v. United States*, 362 U.S. 217, 241 (1960). However, abandonment of property occurs only "if the defendant *intended* to abandon the property and his decision to abandon it was not due to police misconduct." *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997) (emphasis added). In this case, it was undisputed that Miller's abandonment of his thumb drive was unintentional.

was ever found. Miller had left the drive at work on multiple occasions, and the drive was returned to him on those occasions. The district court could have reasonably inferred that in order to return the drive to Miller, others must have taken temporary possession of the drive and possibly accessed it to ascertain whether it belonged to Miller. Thus, Miller did not exercise complete dominion or control over the drive, at least during the times he had misplaced it. The record also supports a finding that Miller did not take precautions to maintain his expectation of privacy. Again, Miller did not mark the drive with his name, badge number, address, or telephone number. And, despite his knowledge of computers, Miller did not protect his drive with a password or secure the drive in a locked case. Instead, on the occasion in question, Miller left the drive connected to the patrol-room computer where it was easily accessible to others. Furthermore, Miller also testified that he used the thumb drive for storing police activity reports, which the district court could have reasonably inferred was not a private use. Finally, Miller's claim of privacy in a computer device that stores work-related data is not consistent with historical notions of privacy. *See, e.g.*, *Voyles v. State*, 133 S.W.3d 303, 306 (Tex. App.—Fort Worth 2004, no pet.) (concluding that appellant "did not have a reasonable expectation of privacy with regard to his work computer and the materials stored in it" because, among other reasons, computer was used for work-related purposes).

Considering the totality of the above circumstances, we cannot conclude that the district court abused its discretion in finding that whatever subjective expectation of privacy Miller may have had in the thumb drive was not objectively reasonable under the circumstances in this case. *See, e.g.*, *Brackens v. State*, 312 S.W.3d 831, 837 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (observing that "an individual's conduct or activity or the circumstances of the situation" may "significantly lessen the defendant's reasonable expectation of privacy by creating a reasonably

11

foreseeable risk of intrusion by private parties"); *Lown v. State*, 172 S.W.3d 753, 761 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (concluding that appellant failed to show that his expectation of privacy was objectively reasonable because, among other reasons, "there is no evidence demonstrating that appellant took any precautions (such as encryption) to protect his privacy in the information contained on the computer system"). Therefore, we cannot conclude that the district court abused its discretion in denying Miller's motion to suppress the evidence obtained as a result of the initial searches and subsequent seizure of his thumb drive.

We next address Miller's consent to the subsequent searches of his thumb drive and his other computers. Since we have already determined that there was no constitutional violation prior to Miller giving consent (because Miller did not have a reasonable expectation of privacy in the thumb drive), the only question remaining is the validity of that consent.[5] An exception to the warrant requirement, consent is valid when it is voluntarily given. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007); *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006); *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). "The validity of a consensual search is a question of fact, and the State bears the burden to prove by clear and convincing evidence that consent was obtained voluntarily." *Gutierrez*, 221 S.W.3d at 686. "This burden includes proving that consent was not the result of duress or coercion." *Id*. "To determine whether this burden is met, we examine the totality of the circumstances." *Id*.

---

[5] If there had been a constitutional violation, we would also need to determine whether the causal relationship between the illegal search and seizure and Miller's consent was attenuated—i.e., that the illegal search and seizure did not "taint" the otherwise voluntary consent. *See Brick v. State*, 738 S.W.2d 676, 680-81 (Tex. Crim. App. 1987). We need not address that question in this case.

Courts consider many factors in deciding if a suspect's consent was given voluntarily, including: (1) whether the consenting person was in custody; (2) whether the suspect was arrested at gunpoint; (3) whether the suspect had the option of refusing consent; (4) the constitutional advice given to the suspect; (5) the length of detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment. *See Reasor*, 12 S.W.3d at 318; *Flores v. State*, 172 S.W.3d 742, 749 (Tex. App.—Houston [14th Dist.] 2005, no pet.). We also consider the suspect's age, intelligence, and education. *Reasor*, 12 S.W.3d at 318; *Flores*, 172 S.W.3d at 750. Therefore, the examination of the totality of the circumstances should include all the circumstances before the search, the suspect's reaction to pressure, and any other factor deemed relevant. *Reasor*, 12 S.W.3d at 818.

There were some circumstances tending to show that Miller may have been in custody during the interview. Miller testified that his weapon was taken from him prior to the interview and that one of the interviewers became "very antagonistic and accusatory" as the interview proceeded. Miller was also informed during the interview that child pornography had already been found on his thumb drive. Thus, Miller believed that "if I didn't sign the consent forms, I was going to get served with a search warrant anyway." As a result of these circumstances, Miller "somewhat felt like" he was in custody and "expected to be arrested at any time."

On the other hand, there were many other circumstances tending to show that Miller was not in custody and that his consent was obtained voluntarily. According to Sergeant Hensley, the interview lasted approximately 20 to 30 minutes. A transcript of the interview was admitted into evidence, and there is nothing in the transcript to indicate that Miller was subject to any sort of coercion, duress, or physical force during the interview. Hensley testified that Miller "was told in

13

the very beginning of the interview that he was not under arrest, that he was free to leave at any time, did not have to talk to us, and he also wasn't under indictment or anything like that." This testimony is confirmed by the transcript of the interview. Also, Miller admitted that he was not in handcuffs at the time of the interview, that no weapons were drawn at any time, that he was not told that he was under arrest or that the issuance of a search warrant was imminent, that he was not arrested until two or three months later, and that nobody had prevented him from leaving during the interview. In fact, Miller testified that he was allowed to leave the interview room and go to his car in order to retrieve his reading glasses before signing the consent-to-search forms. Additionally, Miller testified that he had 22 years of law-enforcement experience and 1,764 hours of law-enforcement training, including classes on law, search-and-seizure procedures, and consent. The district court could have reasonably inferred from this evidence that Miller knew that he was not required to sign the consent forms and that Miller was fully aware of the legal consequences of giving his consent to search his thumb drive and other computers.

Considering the totality of the above circumstances, we cannot conclude that the district court abused its discretion in finding that the State proved by clear and convincing evidence that Miller's consent was obtained voluntarily. Thus, we cannot conclude that the district court abused its discretion in denying Miller's motion to suppress the evidence obtained as a result of that consent.

We overrule Miller's first issue.

**Article 38.23**

In his second issue, Miller asserts that his motion to suppress should have been granted because the evidence was obtained in violation of article 38.23 of the code of criminal procedure, which provides in relevant part that "no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas . . . shall be admitted in evidence against the accused on the trial of any criminal case."  Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).  The law that Miller claims was violated in this case is breach of computer security, section 33.02 of the penal code, which provides that "[a] person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."  Tex. Penal Code Ann. § 33.02(a) (West 2003).  According to Miller, the statute was violated by Edwards when he first accessed Miller's thumb drive in order to identify to whom it belonged and by Chief Taylor when he subsequently accessed the drive.

We first observe that Miller is raising this argument for the first time on appeal.  The record does not reflect that section 33.02 was raised in Miller's motion to suppress or argued at the suppression hearing.  Because Miller did not raise this contention below, it is waived.  *See* Tex. R. App. P. 33.1(a); *Smith v. State*, 236 S.W.3d 282, 291 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see also Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002) ("[A] trial court's decision will not be reversed on a theory the trial court did not have an opportunity to rule upon and upon which the non-appealing party did not have an opportunity to develop a complete factual record.").

Moreover, even if the issue had been preserved, the record would support a finding by the district court that Miller, by leaving his thumb drive in an area accessible to all of his co-workers, and by allowing them to put the drive in his box if it was found, gave effective consent for his co-workers to access the drive in order to identify whether the drive belonged to him. *See Knepp v. State*, No. 05-08-00002-CR, 2009 Tex. App. LEXIS 1765, *9 (Tex. App.—Dallas Mar. 13, 2009, no pet.) (not designated for publication) ("By leaving his computer open and unsecured, appellant knew he was leaving it for his coworkers to access. Under these circumstances, the trial court could reasonably conclude that [a co-worker] had appellant's effective consent to access the computer.").

We overrule Miller's second issue.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   March 9, 2011

Publish

16