# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00485-CR

**Leeroy Milligan, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 14,123, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After the trial court denied his motion to suppress evidence, appellant Leeroy Milligan, Jr. pleaded guilty to a charge of possession of more than one but less than four grams of crack cocaine. The trial court found that appellant was a habitual offender and assessed sentence at twenty-five years in prison. Appellant contends that the trial court abused its discretion by denying his motion to suppress evidence because the police lacked reasonable suspicion to justify an investigatory detention and by denying his motion to suppress statements that were the product of a custodial interrogation conducted without *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). We will affirm the judgment.

## BACKGROUND

Elgin Police Department dispatcher Athena King testified that on the afternoon of February 4, 2011, she received a report from Travis County that a caller on a cell phone in Travis County had requested that an armed officer come to 105 Masonic Drive in Elgin. She notified

an officer, then received a follow-up call from a man identified as David Lashon requesting police response to that address. Lashon said, "[M]y wife's home by herself and she's scared . . . . Three armed men are at 105 Masonic." Lashon said that his wife had reported that the men had pulled up in front of her house in a big, dark car— possibly a Cadillac—and were looking at the house. King advised Elgin police officers that she was on the line with a caller whose wife was home alone, and that there were three armed men outside the house. Lashon told King that he and his wife had argued, that she kicked him out of the house, that she was nervous because "now the people are coming over to her house all the time sitting there eyeballing my wife and I'm not even there." Lashon also mentioned that there might be a warrant out for his arrest. King did not pass the warrant information along to the officers, nor did she share Lashon's report that his wife had kicked him out of the house or his report that the men had not gotten out of the vehicle. She said that, for officer preparation and safety, she informed the officers that the men were thought to be armed. She said she assumed that, because she was expressly passing along information from an off-site caller, the responding officers would understand that the information was not eyewitness information.

Elgin police sergeant Frank Delgado and William Silva responded to the dispatch. Delgado testified that he saw a large car matching the description passed along by King parked near the property line of 105 Masonic. He did not attempt to corroborate the dispatch information by checking with neighbors because he did not consider that to be sound tactics under the circumstances. He activated his vehicle's video camera and then went to investigate. He drew his handgun, holding it behind his back as he approached the car. He testified that the car's tinted windows prevented him from seeing into the car easily. Delgado said that, because the caller had reported that the men were armed, he was concerned that they meant harm to others, and he wanted to prevent that. Delgado said he saw the driver open the car door, see him, then

2

close the door. Delgado feared that the driver was retrieving a weapon, preparing to drive away, or destroying evidence of wrongdoing. Delgado was concerned for his own safety. Sergeant Silva was approaching the passenger side of the car. Meanwhile, a neighbor, whom Delgado knew because he had previously transported her to mental health facilities, was yelling that the driver was her son. Delgado ordered the occupants to get out of the car, and they complied. He handcuffed the men and conducted a patdown search for weapons. While he searched appellant, a small opaque plastic box fell out of appellant's pants. Appellant stepped on the box and tried to push it into the mud, but Delgado retrieved it. Delgado recognized the box, ostensibly containing a bicycle repair kit, as a vessel often used to carry crack cocaine. He shook the box and heard a sound like small mints rattling. He opened the box and saw a substance that resembled crack cocaine. Subsequent testing and weighing revealed that the box contained at least one gram and less than four grams of crack cocaine. Police found no weapons on the men or in the car. Appellant was put into Silva's police car, where Delgado asked appellant if he wanted to talk about whether the drugs were his and whether the other men were involved.

Before trial, appellant moved to suppress the evidence obtained through the warrantless search of his person and his conversation with police that occurred before he was read the *Miranda* warning. The trial court overruled his motion, finding the following:

The defendant's statements were voluntary.

The defendant's statements were recorded.

The defendant was in custody at the time of the statements.

The defendant's statements resulted from interrogation.

3

The defendant's statements are admissible under Section 5 of Article 38.22 of the Texas Code of Criminal Procedure if the statements have a bearing on the credibility of the accused as a witness.

Appellant then pleaded guilty without a punishment recommendation, and the trial court stated that he could file this appeal.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court's ruling on a motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457-58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. We give almost total deference to the trial judge's rulings on mixed questions of law and fact when the resolution of those questions depends on an evaluation of credibility and demeanor. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Johnston*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d

4

at 89. All purely legal questions are reviewed de novo. *Johnston*, 336 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the court's findings of fact and will not disturb them on appeal. *Johnston*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89; *Miller v. State*, 335 S.W.3d 847, 854 (Tex. App.—Austin 2011, no pet.).

## DISCUSSION

Appellant contends that the trial court abused its discretion by overruling his motion to suppress, arguing that the police lacked reasonable suspicion to justify an investigatory detention, and by denying his motion to suppress statements that were the product of a custodial interrogation conducted without *Miranda* warnings.

**The investigatory detention was justified.**

When reviewing the trial court's determination of what is reasonable suspicion, we examine the totality of the circumstances and the information available to police. *Derichsweiler v. State*, 348 S.W.3d 906, 915 (Tex. Crim. App. 2011). "[I]nformation provided to police from an identifiable citizen-informant, who may be held to account for the accuracy and veracity of the report, may be regarded as reliable." *LeCourias v. State*, 341 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2011, no pet.). "[T]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether

5

reasonable suspicion exists." *Derichsweiler*, 348 S.W.3d at 914 (footnotes and citations omitted). A police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. *Id.* We consider all information provided by a caller to a dispatcher regardless of whether the dispatcher passed the information along to the responding officer. *Id.* The relevant inquiry is not necessarily whether conduct is innocent or criminal, but the degree of reasonable suspicion that attaches to particular noncriminal acts. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see United States v. Sokolow*, 490 U.S. 1, 10 (1989). Reasonable suspicion may be validly based on articulable facts that are ultimately shown to be inaccurate or false. *Williams v. State*, 621 S.W.2d 613, 615 (Tex. Crim. App. 1981); *Kelly v. State*, 721 S.W.2d 586, 587 (Tex. App.—Houston [1st Dist.] 1986, no pet.).

The trial court did not abuse its discretion by determining that the totality of the information provided by Lashon, who identified himself as a resident of the house and asserted that he was coming home, provided a sufficient basis for reasonable suspicion of wrongdoing that supported appellant's detention. The report that the men possessed guns is not alone evidence of a crime, but could in some circumstances raise a concern about impending wrongdoing. The assertion that the allegedly armed men were parked in front of the residence and "eyeballing" the house added an air of menace, and Lashon's repetition that men were watching the house despite the fact that Lashon was not "even there" adds a flavor that perhaps armed men were looking for him for illegal purposes—an impression lent further weight by Lashon's admission of possible warrant for his arrest. (This latter fact is relevant to the determination even though the dispatcher did not pass it along to Delgado because it adds to the collective knowledge of the police force. *See Derichsweiler*, 348 S.W.3d at 914.) The fact that Lashon's wife called him and yelled at him because of this situation, rather than calling police herself, adds yet another indication of potential illegal conduct.

6

The driver's recoil and retreat into the car at the sight of Delgado reinforced the impression of impending illegal action. Although each of these circumstances taken in isolation might not be sufficient, the trial court did not abuse its discretion by concluding that the totality of the circumstances amounted to provide reasonable suspicion that justified the investigatory detention of appellant and his companions.

**The court did not abuse its discretion by declining to suppress appellant's statements entirely.**

Our review of appellant's second issue is somewhat limited by the procedural posture of the case. He sought to suppress statements he made to Delgado without having been informed of his *Miranda* rights. The trial court overruled his motion to suppress, but did not admit the statements into evidence or rule that they were fully admissible for all purposes. The trial court expressly held that the statements were admissible "if the statements have a bearing on the credibility of the accused as a witness." Appellant pleaded guilty and did not testify, so the trial court was never required to admit or exclude the statements.

Before questioning a person in custody, law enforcement officials must warn the person that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. *Miranda*, 384 U.S. at 444. Violation of this rule, however, does not prevent the State from using a defendant's voluntary, unwarned statements for impeachment purposes on cross-examination. *Oregon v. Elstad*, 470 U.S. 298, 307 (1985); *Harris v. New York*, 401 U.S. 222, 223-26 (1971).

There is no dispute that appellant was not free to leave and had not been read his rights when Delgado asked if he wanted to talk. There is no allegation that appellant's statements were coerced.

The State asserted in its trial-court brief that, "[a]fter being arrested for possession of a controlled substance, the defendant made several statements in regard to a neutral question by Sergeant Delgado. The State does not intend to offer these statements in the case in chief. The State requests the court find that the statements made by the defendant were voluntary and would be admissible under Article 38.22 Section 5 of the Texas Code of Criminal Procedure should the defendant testify." This limited proposed use squares with the holdings of *Elstad* and *Harris*. *See Elstad*, 470 U.S. at 307; *Harris*, 401 U.S. at 223-26.

The trial court's express finding that the statements were admissible *if* they had a bearing on appellant's credibility is consistent with both the holdings in *Elstad* and *Harris* and the State's proposed limited use of the statements. We cannot say that the trial court abused its discretion in concluding that the statements might be admissible for that limited purpose and in overruling the motion to suppress on that basis.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:  July 18, 2014

Do Not Publish