

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00042-CR

Laura **BRISENO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR2622
Honorable Ron Rangel, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: April 15, 2020

AFFIRMED

Appellant Laura Briseno appeals the trial court's denial of her motion to suppress, arguing that the officer unreasonably prolonged her detention for walking on the wrong side of the street. We affirm.

## BACKGROUND

The arresting officer, Officer David Bortel of the Universal City Police Department, was the only witness to testify at the suppression hearing. According to Officer Bortel, on April 14, 2017, at approximately 4:30 a.m., he was patrolling in the 600 block of East Langley in San

Antonio, Texas, when he saw a man and woman "in front of me walking on the righthand side of the roadway with their backs towards me." Officer Bortel testified there was not a sidewalk, and the man and woman were walking with the traffic in violation of section 552.006 of the Texas Transportation Code.[1] Officer Bortel stopped the man and woman, informing them that they were walking on the wrong side of the road in violation of the Transportation Code. He then requested that they identify themselves. The woman said that she did not have any identification with her, but said her name was "Adriana Parsla" and her date of birth was November 18, 1968. Officer Bortel then attempted to verify her identification through several databases but was unable to find any records relating to the name and date of birth given. Officer Bortel questioned the woman again to make sure the information provided was correct. He asked her if there were any "alternate ways of identifying her through previous arrest records" or "any other records she may have." The woman said that the Schertz Police Department and Guadalupe County would have records of her prior arrest. Officer Bortel requested dispatch to contact those agencies, but no records were returned for the name and date of birth given. Officer Bortel then asked the man, who had been identified as Cody Engelke, for the woman's name. Engelke said her first name was "Laura," but he was not able to give her last name or date of birth. Based on Engelke's answer, Officer Bortel "determined that she was giving [him] a false name and date of birth," which was an arrestable offense. According to Officer Bortel, he decided to place the woman under arrest for failing to identify herself and providing false information, but the woman then began "complaining of shortness of breath." EMS was called to the scene. When EMS arrived, the woman was clutching her purse. According to Officer Bortel, the woman would not let the purse out of her possession.

---

[1] Section 552.006 provides that "a pedestrian may not walk along and on a roadway if an adjacent sidewalk is provided and is accessible to the pedestrian." TEX. TRANSP. CODE ANN.§ 552.006(a). "If a sidewalk is not provided, a pedestrian walking along and on a highway shall if possible walk on: (1) the left side of the roadway; or (2) the shoulder of the highway facing oncoming traffic." *Id*. § 552.006(b).

When the woman was on the stretcher in the ambulance, Officer Bortel took the purse from the woman and threw it to the back of the ambulance. He then got out of the ambulance, walked around to the back of the ambulance, opened the back doors, and picked up the purse, "immediately detect[ing]" "an odor of marijuana" emanating from the purse. He opened the purse and saw "marijuana, mushrooms, methamphetamine," along with "paraphernalia described as scales [and] unused baggies." Officer Bortel testified he also saw "large bundles of cash and a firearm." Officer Bortel then accompanied Briseno to the hospital. According to Officer Bortel, Briseno was not free to leave.

The "body cam" videos from both Officer Bortel and another officer at the scene, which were admitted in evidence, are consistent with Officer Bortel's testimony. The videos show that Officer Bortel spent the first six minutes of the detention trying to verify the name given by Briseno on his computer and through dispatch, and then going back to Briseno to inquire whether the information he was using was correct. At seven minutes, he questions Briseno about why her companion said her name was "Laura." Briseno replies that she does not know why her companion would call her by "Laura." Officer Bortel then asks Briseno her date of birth and her age. Briseno's answers regarding her age and her date of birth are not consistent with one another. At ten minutes, Officer Bortel again asks dispatch to find a person by the name Briseno had given. At fourteen minutes, Briseno complains of shortness of breath and states she has seizures. Officer Bortel tells Briseno to breathe and calls for EMS while Briseno is sitting on a curb. At sixteen minutes, Officer Bortel asks Briseno again why her name could not be found in the system even though she said she had a Texas Identification Card. Briseno does not respond. At eighteen minutes, Officer Bortel informs Briseno that "Schertz" did not have "anything either," even though Briseno said she should be in that system. On the video, Briseno can now be seen lying on the ground and moaning. Officer Bortel again tells her to take deep breaths. At twenty-two minutes, an ambulance arrives at the

scene and begins assessing Briseno. At twenty-five minutes and out of earshot of Briseno, one of the EMS personnel informs Officer Bortel that Briseno is faking her symptoms. At twenty-six minutes, one of the EMS personnel asks the other officer at the scene whether a weapons check had been performed on Briseno. The officer says no. The EMS personnel then goes into the ambulance where Briseno is lying on a gurney and still holding her purse. The EMS personnel requests that Officer Bortel perform a weapons check. Even though she was informed the officers have to do a weapons check, Briseno refuses to let go of her purse. At twenty-nine minutes, the purse has been forcibly removed from Briseno and has been thrown on the floor of the ambulance. EMS personnel continue working on Briseno. At thirty-one minutes, one of the EMS personnel asks Officer Bortel if he had looked inside the purse for weapons. Officer Bortel then opens the purse and pulls from the inside of the purse a plastic bag of what appears to be methamphetamine. Officer Bortel also pulls from the purse bundles of cash, a gun, what appears to be marijuana, mushrooms, and scales. Officer Bortel remains in the ambulance as Briseno is transported to the hospital.

After hearing all the evidence, the trial court denied Briseno's motion to suppress. The trial court later signed findings of fact and conclusions of law. Among other findings, the trial court found that (1) after Officer Bortel checked several sources and was unable to find any records connected to the name and date of birth given by Briseno and (2) after Briseno's companion said Briseno's first name was "Laura," "Officer Bortel concluded that [Briseno] was giving him a false name and false date of birth, which is an arrestable offense." According to the trial court, at the same time Officer Bortel decided to arrest Briseno, Briseno started complaining of shortness of breath and the onset of seizures; thus, Officer Bortel called EMS. The trial court also found that Briseno refused to let go of her purse and that Officer Bortel took possession of it after Briseno had been placed on the stretcher and put into the ambulance. The trial court found Officer Bortel

"immediately detected an odor of marijuana coming from inside the purse" and when he "opened the main pouch of the purse," he "saw marijuana, mushrooms, methamphetamine, scales, unused baggies, large bundles of cash, prescription pills, and a firearm." The trial court also found that at the time the purse was taken from Briseno, "she was in custody," and Officer Bortel had "told another officer that [Briseno] was going to be placed under arrest for providing a false identification." The trial court further found that "Officer Bortel maintained custody of [Briseno] while she was transported to the hospital." Finally, the trial court found that when Briseno was discharged from the hospital, "she finally gave Officer Bortel her real name and date of birth." Officer Bortel "was then able to locate information that [Briseno] has warrants out for her arrest, and she was formally placed under arrest."

After the trial court denied Briseno's motion to suppress, she entered into a plea-bargain agreement and was sentenced to four years of imprisonment for possession of a controlled substance PG1, 1 gram to 4 grams. She then appealed the denial of her motion to suppress.

### STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). At a motion to suppress hearing, the trial court is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony. *Id.* at 190. Accordingly, the trial court may choose to believe or to disbelieve all or any part of the witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *Miller v. State*, 335 S.W.3d 847, 854 (Tex. App.—Austin 2011, no pet.).

This same deferential standard of review "applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into

evidence at a suppression hearing." *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013). "Although appellate courts may review de novo 'indisputable visual evidence' contained in a videotape, the appellate court must defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation." *Id*. at 570-71. Therefore, we afford almost complete deference to the trial court in determining historical facts. *Lerma*, 543 S.W.3d at 191. However, we review de novo whether the facts are sufficient to give rise to reasonable suspicion in a case. *Id*.

## DISCUSSION

The Fourth Amendment prohibits unreasonable searches and seizures. *See* U.S. CONST. amend. IV. "A stop and frisk by law enforcement implicates the Fourth Amendment's protections." *Lerma*, 543 S.W.3d at 191. "This is true whether the person detained is a pedestrian or the occupant of an automobile." *Id*. "A Fourth Amendment analysis regarding an officer's stop and frisk has two prongs." *Id*. "A court must first decide whether the officer's action was justified at its inception." *Id*. "Next, a court must decide whether the search and seizure were reasonably related in scope to the circumstances that justified the stop in the first place." *Id*.

In the context of a traffic stop, police officers are justified in stopping a pedestrian or a vehicle when they have reasonable suspicion to believe that a traffic violation has occurred. *See id*. "A traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop." *Id*.

On appeal, Briseno argues that even though Officer Bortel could not confirm Briseno's identity in his database, Officer Bortel did not have any specific or articulable facts that would have led him to believe Briseno "was currently or about to be in commission of the offense of failure to identify." According to Briseno, "[t]hat Officer Bortel could not confirm [Briseno]'s

name and date of birth is not reasonable suspicion upon which to base an investigative detention into the offense of failure to identify." For support, Briseno cites *St. George v. State*, 237 S.W.3d 720 (Tex. Crim. App. 2007). In *St. George*, an officer stopped a vehicle for having an inoperative license plate light. *Id*. at 722. While one officer informed the driver that her license plate light was not working and sought her driver's license and registration information, another officer asked appellant, the only passenger, for identification. *Id*. The appellant told the officer that his identification was not with him; he then gave the officer a name and date of birth. *Id*. Dispatch could find no record of the name and date of birth given by appellant. *Id*. One officer issued a warning ticket to the driver while the other officer asked appellant if his driver's license was expired. *Id.* The appellant replied that his driver's license had expired. *Id*. After questioning the appellant further, the officer learned the appellant's "true name." *Id*. When the officer ran that name in the database, the officer discovered the appellant had outstanding warrants for speeding and not having insurance. *Id*. The officer then arrested the appellant; at the time of the arrest, ten minutes had passed since the driver had been issued a citation. *Id*.

The court of criminal appeals explained in *St. George* that "[a]bsent reasonable suspicion, officers may conduct only consensual questioning of passengers in a vehicle." *Id*. at 726. The State argued that "the misidentification by [the appellant], coupled with his nervous demeanor, amounted to reasonable suspicion that appellant was committing the offense of failure to identify." *Id*. The court of criminal appeals noted, however, that the officers "did not learn that appellant misidentified himself until after the driver was issued a warning citation." *Id*. "Therefore, giving a false name when officers did not know it was false could not give them reasonable suspicion to investigate further, nor was the fact that the dispatcher found no record of the first name given by appellant sufficient to raise suspicion of criminal activity." *Id*. Further, "any single trait, including nervousness, is not enough to amount to reasonable suspicion." *Id*. The court of criminal appeals

concluded the State had not established the reasonableness of the detention. *Id*. at 726. In doing so, however, the court of criminal appeals emphasized that it did "not intend to create a bright line rule that would automatically make an investigative detention unreasonable the moment that the initial reason for the traffic stop ends." *Id*. at 727.

The facts presented in this appeal are distinguishable from those in *St. George*. The appellant in *St. George* was simply a passenger and the officers had no reasonable suspicion to detain him; it was the driver whom they had reasonable suspicion to detain. *See id*. at 726. Here, in contrast, Officer Bortel saw Briseno commit the traffic offense of walking on the wrong side of the road in violation of section 552.006 of the Transportation Code. Thus, at the onset of the encounter, Officer Bortel not only had reasonable suspicion to detain Briseno, but he also had a basis on which to arrest her. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (permitting a peace officer to arrest an offender without a warrant if the offense is "committed in his presence or within his view"); *see also Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (explaining that a police officer has reasonable suspicion for a detention if he or she has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will engage in criminal activity). Officer Bortel was thus authorized to detain Briseno, request that she provide identification, frisk for weapons, and conduct a check for outstanding warrants. *See United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010); *see also United States v. Fennell*, No. SA-17-CR-876-XR, 2018 WL 2293966, at *4 (W.D. Tex. May 17, 2018) (explaining that officers who saw a man jaywalking across the street "were authorized to ask the defendant his name, request that he provide identification, frisk for weapons, and conduct a check for outstanding warrants"); *Agnew v. State*, No. 06-17-00160-CR, 2018 WL 636195, at *2-3 (Tex. App.—Texarkana Jan. 31, 2018, no pet.) (holding that because officer saw appellant walking on the wrong side of the street in violation of

section 552.006 of the Transportation Code, the officer at the onset of the encounter had reasonable suspicion and a basis to arrest appellant without a warrant); *In re A.B.*, No. 04-01-00546-CV, 2002 WL 31375188, at *3 (Tex. App.—San Antonio 2002, no pet.) (holding that officer's observation of juvenile violating section 552.006 of the Transportation Code was sufficient to permit officer to make warrantless arrest).

All of Officer Bortel's questions posed to Briseno were related to his attempt to confirm her identification. Officer Bortel was not engaged in a "fishing expedition," but was attempting to verify to whom the citation should be addressed. *See Sieffert v. State*, 290 S.W.3d 478, 483 (Tex. App.—Amarillo 2009, no pet.) (explaining that "[a]lthough no rigid time limitation exists on its length, a traffic stop is temporary and may last no longer than necessary to effectuate its purpose" and that "[o]nce its purpose has been satisfied, the stop may not be used as a 'fishing expedition for unrelated criminal activity'"). Even though Briseno said she had a Texas Identification Card, Officer Bortel was unable to confirm Briseno's identity in his database. Further, Briseno's companion gave a different name than the one provided by Briseno. Additional information provided by Briseno could not be confirmed by dispatch, and Briseno gave an age and date of birth that were inconsistent. At that point, Officer Bortel not only had probable cause to arrest Briseno for the traffic violation but he also had probable cause to arrest Briseno for failure to identify and was authorized to conduct a search incident to an arrest. *See State v. Ford*, 537 S.W.3d 19, 24 (Tex. Crim. App. 2017).

## CONCLUSION

For the foregoing reasons, we hold the trial court did not err in denying Briseno's motion to suppress. The judgment of the trial court is affirmed.

Liza A. Rodriguez, Justice

Do not publish